IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHALABY, ET AL, | No. C06-07026 MJJ |
| Plaintiffs., | **ORDER GRANTING MOTION TO TRANSFER** |
| v. | |
| NEWELL RUBBERMAID, INC. ET AL, | |
| Defendants. | |

Pending before the Court is Third Party Defendant Worthington Industries, Inc.'s ("Worthington") Motion to Transfer.[1] Plaintiffs Andrew Shalaby and Sonia Dunn-Ruiz ("Plaintiffs") oppose the motion.[2] Despite the presumption in favor of a plaintiff's choice of venue, the court finds that the convenience of the parties and witnesses, and the interests of justice, warrant transfer. Therefore, for the reasons discussed in more detail below, the Court **GRANTS** the Motion to Transfer Venue to the Southern District of California.

**BACKGROUND**

Plaintiffs originally filed a Complaint in Alameda County Superior Court of the State of California, naming Newell Rubbermaid Inc. ("Newell") and The Home Depot, Inc ("Home Depot")

---

[1] Docket No. 50.

[2] Plaintiffs also filed an Administrative Motion for Leave to File Objections to Evidence in the Reply Papers. (Docket No. 75.) Because of the additional evidence submitted by Worthington in connection with its reply, and the relevance of Plaintiffs' evidentiary objectionsh to this Court's evaluation of the importance of the witnesses' testimony, the Court **GRANTS** the Administrative Motion.

as Defendants. The case was removed to this Court. Thereafter, Plaintiffs filed an amended complaint in which Home Depot remains a defendant, but Irwin Industrial Tool Company, Inc. ("Irwin") was named in place of Newell. Plaintiffs assert claims against all Defendants for: (1) strict product liability; (2) strict liability for failure to warn; (3) negligence; (4) negligent failure to warn; (5) breach of implied warranty of merchantability; and (6) negligent infliction of emotional distress. Bernzomatic, a division of Irwin, has sued Worthington and Western Industries, Inc. for indemnity in a third party complaint.

The following facts are undisputed for purposes of this motion, or are established by the record, unless otherwise noted. In early to mid 2005, Shalaby purchased a Bernzomatic MAPP Gas torch kit from a Home Depot store located in El Cerrito, California. The kit allegedly included a torch and a yellow MAPP Gas cylinder filled with MAPP Gas. (Plaintiffs' First Amended Complaint ("FAC") attached as Exhibit A to Request for Judicial Notice ("RJN") at ¶ 9.) Shortly thereafter, Shalaby purchased several replacement cylinders. (FAC ¶ 11.) MAPP Gas is typically used for welding and soldering due to its high combustion temperature of 5301 degrees Fahrenheit (2927 degrees Celsius). (RJN Exh. B at p. 2, § 1a.) However, the product literature states that MAPP gas torches are also "appropriate" for other projects such as, *inter alia,* "lighting pilot lights and grills" and "starting campfires." (Epstein Decl., Exh. A *&* Exh. B.) Shalaby regularly used his torch to light campfires. (Worthington's Motion To Transfer Venue, 2:12-13 ("MTV").)

During the week of April 17, 2006, Plaintiffs and their two children were vacationing at a recreational vehicle park known as "Campland on the Bay" located in San Diego, California. (MTV at 2:13-15.) Shalaby took his torch and MAPP Gas cylinders with him on this trip. Shalaby claims that on April 21, 2006 when he attempted to light a campfire using his torch, the cylinder exploded and/or discharged its contents, causing Shalaby to suffer burn injuries. (FAC ¶ 20-22.)

Several third party witnesses that witnessed the aftermath of the incident, including camp rangers Randy Stephens and Warren Ratliff, and paramedics Robert Price and Joe Russo, all work and reside in the Southern California area. (*See* Huang Decl. Exh. C, Price Depo. at 5:10-6:21; Huang Decl. Exh. A; Stephens Depo. at 9:1-22; Huang Decl. Exh B, Ratliff Depo. at 8:5-9:4; Huang Decl. Exh. D, Russo Depo. at 10:19-11:9.) They offer the following testimony.

1    Ranger Stephens was on duty at Campland on the day of the incident. (Huang Decl. Exh. A,
2 Stephens Depo. at 11:7-10.) Fellow campers witnessed the incident and one camper reported it to
3 the camp rangers. Ranger Stephens went to the scene, observed Plaintiff make statements right after
4 the incident, and inspected the torch. (*Id.* at 10:4-14; 11:7-19.)
5    Warran Ratliff is also a ranger at Campland. (Huang Decl. Exh. B, Ratliff Depo. at 9:8-22.)
6 Ratliff arrived at the scene along with the fire department and paramedics. (*Id.* at 17:23-18:7.) At
7 the scene, Ratliff spoke to neighboring campers. (*Id.* at 18:21-19:2.) Among other things, campers
8 told him that Shalaby had attempted to light a campfire with his torch and when he was
9 unsuccessful, he became frustrated and started banging the torch on the campfire ring. (*Id.* at 19:7-
10 20:23.)
11    Ratliff made an hour-long examination of the torch and cyclinder after the incident. (*Id.* at
12 66:20-23.) Based on his examination, Ratliff felt that the torch apparatus may have been improperly
13 attached to the cylinder or not placed fully in the on position. (*Id.* at 31:5-13.) Ranger Stephens also
14 made observations of the cylinder. (Huang Decl. Exh. A, Stephens Depo. at 42:14-43:1.)
15    Paramedic Robert Price responded to the accident as an intern for Station 21 of the San
16 Diego Fire Department. (Huang Decl. Exh. C, Price Depo. at 6:15-7:14.) Price treated Shalby at the
17 scene. (*Id.*. at 9:5-10:10.) Price saw beer bottles at the campsite and smelled alcohol on Shalby's
18 breath. (*Id.* at 22:13-23:6.) Price's supervisor, Joe Russo, was present when Price was interviewing
19 Shalaby. Russo said that he heard Shalaby state that he had kicked a propane cylinder into the fire
20 and that it exploded. (Huang Decl. Exh. D, Russo Depo. at 22:18-23:7.)
21    An unidentified engineer with the fire department told Stephens and Ratliff that the fire
22 department did not need to take the torch or cylinder into evidence because "the gentleman in
23 question, the patient had already told them, and that it was an accident." (Huang Decl. Exh. A,
24 Stephens Depo. at 61:22-62:4; Huang Decl. Exh. B, Ratliff Depo. at 35:5-36:7.) Ratliff took the
25 cyclinder and torch back to the ranger station where it remained for two or three days. (Huang Decl.
26 Exh. B, Ratliff Depo. at 36:15-21.) Including Price and Russo, seven persons from the San Diego
27 Fire Department Station 21 responded to the incident. (Huang Decl. Exh. D, Russo Depo. at 29:17-
28 30:20; 45:6-8.) Ratliff believes that another staff member who was present at the campground threw

3

1  the torch and cylinder away.  (Huang Decl. Exh. B, Ratliff Depo. at 37:15-17.)

2  Shalaby spent approximately one week at a burn unit at U.C. San Diego Medical Center
following the incident, before being transferred to St. Francis Memorial Hospital in San Francisco
on or about April 28, 2006.  (Shalaby Decl., ¶ 4.)  At St. Francis, Mr. Shalaby was treated by several
physicians including Drs. Thomas P. Harries, Gifford S. Leung, Guido J. Gores, Jr. and Bruce M.
Potenza.  (Shalaby Decl., ¶ 6.)  Plaintiff underwent several surgeries, including skin grafts, and daily
medical treatment.  (Shalaby Decl., ¶ 5.)  After he was released from St. Francis Memorial Hospital,
Mr. Shalaby received medical treatment and consultation for his injuries from his regular physician,
Kenneth J. Gjeltema, in Berkeley, California which he is still receiving.  In addition, Mr. Shalaby
received psychotherapy for psychological injuries from Richard Bloom, PhD, in Berkeley, which he
also continues to this day.  (Shalaby Decl., ¶ 7.)

On June 1, 2006, Joe Tancredy from St. Paul Travelers Insurance, a liability insurance carrier
for BernzOmatic, interviewed Mr. Shalaby at his residency in El Cerrito concerning the incident and
his injuries.  (Shalaby Decl., ¶ 8.)  Mr. Tancredy also inspected Mr. Shalaby's two additional
BernzOmatic MAPP gas cylinders.  (Shalaby Decl., ¶ 9.)  Mr. Tancredy asked to take custody of the
cylinders so that they could be examined by the manufacturers.  (Shalaby Decl., ¶ 9.)

Worthington now requests the Court to transfer this action from the Northern District to the
Southern District of California pursuant to 28 U.S.C. § 1404.

**LEGAL STANDARD**

Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a) (1998).  The purpose of section 1404(a) is to prevent the waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  Under section 1404(a), the moving party has the burden of showing that the balance of conveniences weighs heavily in favor of the transfer in order to overcome the strong presumption in favor of the plaintiff's choice of forum.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).

4

To support a motion to transfer venue, the moving party must show that the forum to which they seek transfer is a forum in which the action originally might have been brought. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). In addition, the transfer must be for the convenience of the parties and witnesses and in the interests of justice. *See Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 269 (C.D. Cal. 1998) (citing *Arley v. United Pac. Ins. Co.*, 379 F.2d 183, 185 (9th Cir. 1969)). Under Section 1404(a), the district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). In reviewing a motion to transfer, the Court may consider the following factors to determine whether transfer is appropriate in a particular case:

> (1) the plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum.

*Royal Queentex Enterprises, Inc. v. Sara Lee Corp.* 2000 U.S. Dist. LEXIS 10139, *8 (N.D. Cal. 2000).

## ANALYSIS

As the party requesting the transfer, Worthington bears the burden of proving that the Southern District of California is the more appropriate forum for this action. *See Jones*, 211 F.3d at 499; *Warfield*, 346 F. Supp. 2d at 1043. Here, the main factors that this Court needs to balance are the convenience of non-party witnesses, and the Plaintiff's choice of forum, as the other factors are largely neutral.

**A.     As A Threshold Issue, This Matter Could Have Been Brought In The Southern District of California.**

A party seeking transfer must show that the desired forum is one in which the action originally might have been brought. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); 28 U.S.C. § 1404(a). Further, there is a three step analysis in determining if the transferee court is a proper venue: (1) the court must have complete personal jurisdiction over defendants; (2) the court must have subject matter jurisdiction; and (3) the court is the proper venue had the

5

claim originally been brought in that court." *Royal Queentex*, 2000 U.S. Dist. LEXIS 10139 at *8.

Here, it is undisputed that the Southern District of California satisfies all three of these requirements. The court has proper subject mater jurisdiction because there is complete diversity of citizenship. The claim exceeds $75,000, and the venue in the Southern District is proper under 28 U.S.C. section 1391(a)(2) because the incident giving rise to this action occurred within the Southern District. The Court finds that Worthington has met its initial burden of demonstrating that the action could have been brought in the Southern District of California.

**B.     Analysis of the Factors.**

Evaluating the facts of the instant case under the relevant factors, and taking into account consideration of convenience and fairness, the Court finds Worthington has met its burden of proving that the Southern District of California is the more appropriate forum for this action.

**1.     Convenience of Witnesses.**

An important factor in determining whether to grant a motion to transfer venue is the convenience of the witnesses. *See Jarvis v. Marietta Corp.*, 1999 U.S. Dist. LEXIS 12659, *6, (N.D. Cal. 1999). In analyzing whether a transfer of a case would serve the convenience of the witnesses, the Court must look at who the witnesses are, the nature of what their testimony will be, and why such testimony is relevant or necessary. *See Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092-93 (N.D. Cal. 2002); *AJ Industries, Inc. v. United States District Court,* 503 F.2d 384, 389 (9th Cir. 1974); *Palace Exploration Co. v. Petroleum Development Co.*, F.3d 1110, 1121 (10th Cir. 2003). The Court will consider not only the number of witnesses located in the respective districts, but also the "nature and quality of their testimony." *See Steelcase, Inc. v. Haworth*, 41 U.S.P.Q.2D (BNA) 1468, 1470 (C.D. Cal. 1996).

Worthington contends that all of the important third-party witnesses are located and reside in the Southern District. Specifically, Worthington claims that the testimony of camp rangers Randy Stephens and Warren Ratliff, and paramedics Robert Price and Joe Russo, would establish that Shalaby, rather than the alleged defect, caused the accident. Fellow campers witnessed the incident and one camper reported it to the camp rangers. Worthington alleges that the testimony of these witnesses will establish that Plaintiff banged the torch against a hard surface and kicked the torch

6

into the fire. (MTV 1:13-15.)  Further, Worthington contends that the testimony will establish that Mr. Shalaby made "admissions that he was stupid and at fault for the incident."

Plaintiff disputes both the admissibility and the importance of these witnesses' testimony. Having reviewed Plaintiffs/' admissibility objections, however, the Court finds that significant portions of the Southern California witnesses' testimony appear to be admissible and to have large probative value to the pivotal questions of causation in this case.  For example, while Ranger Ratliff's recollections of what unidentified campers told him they observed – that they sounds from the direction of Mr. Shalaby's campsite which led them to believe that Mr. Shalaby "became frustrated" and hit the torch against a concrete ring around the campfire pit – may be inadmissible hearsay[3], his own direct observations of the cylinder that exploded are probative of causation. Because the primary physical evidence in this case, the cylinder and the torch, was discarded shortly after the accident, this testimony will be important to the case as a foundation for expert witness testimony, regardless of whether Ranger Ratliff's own opinions about what caused the damage to the cylinder are admissible as expert testimony.

Similarly, the testimony of the two paramedics, and of Ranger Stephens, regarding admissions made by Plaintiff Shalaby is likely admissible and significantly probative.  Plaintiff argues that Paramedic Price's testimony that *someone* told him that Mr. Shalaby kicked around a propane torch and that it went into a fire and blew up is inadmissible.  However, Price's supervisor, Joe Russo, was present when Price was interviewing Shalaby, and said that he heard Shalaby tell Price that he had kicked a propane cylinder into the fire and that it exploded.  (Huang Decl. Exh. D, Russo Depo. at 22:18-23:7.)  Taken together, these paramedics' testimony about Mr. Shalaby's statements appear to be admissible under a hearsay exception as admissions of a party.   Likewise, Ranger Stephens' testimony that he heard Plaintiff Shalaby describe his own actions as "stupid" and the accident being his own "fault" is likely admissible and significant.  While Plaintiffs downplay such testimony, and call into question Shalaby's state of mind when making these statements, the Court finds that the jury could potentially attach great weight to evidence of Shalaby's

---

[3] Worthington indicates it is trying to locate the other campers so they can directly testify. The Court gives minimal weight to this fact as it has not been adequately established that any such witnesses will be located, that they will have probative recollections, or that they are likely to reside in the Southern California area.

7

contemporaneous admissions. The weight given to such evidence is ultimately a question for the jury.

The Court concludes that the testimony of these San Diego area witnesses is critical to Third Party Defendants' defense against Plaintiffs' claims of product defect. (MTV 1:7-8.) At least four third-party witnesses who reside and work in the San Diego area will offer testimony probative to how the accident occurred. If the case remains in the Northern District of California, all the witnesses from San Diego will be required to travel approximately 500 miles to San Francisco to testify at trial. This would likely require several witnesses to arrange to spend one or more nights away from their homes and work. In the alternative, if the case were transferred to the Southern District of California, the witnesses could be on standby and appear at trial on short notice. Moreover, the credibility of these witnesses will be of significant importance to the factfinder, increasing the value of having them testify live at at trial.

On the other side of the equation, Plaintiff argues that a transfer would result in an equal amount of inconvenience, difficulty and expense for the witnesses residing in Northern California. Plaintiffs themselves would be required to travel down to San Diego and would incur travel expenses and inconvenience in doing so. While the Court considers this inconvenience in the balance, it does not attach as much importance to it as inconvenience to the Southern California witnesses because Plaintiffs are parties to this case. "[W]hile the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." *Saleh v. Titan Corp.,* 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005).

Plaintiffs also contend that several of Shalaby's treating physicians would have to travel down to Southern California to testify about damages. Plaintiffs state that the doctors' testimony will establish the degree and extent of Shalaby's injuries and will explain why his injuries prevented him from returning to work for a significant period of time. The Court, however, finds that there is less need for the factfinder to hear live testimony from these physicians, given that: (1) the injury itself is not disputed; (2) the scope of any dispute over the long term effects of the injury is not yet known; and (3) the testimony regarding the injuries and treatment provided by these physicians is not the subject of vigorous dispute and can be provided in a deposition. Therefore, Plaintiff's

8

reliance on damages testimony from these witnesses does not offset Defendants' clear showing of witness inconvenience.

### 2. Plaintiff's Choice of Forum.

Generally, a plaintiff's choice of forum is afforded substantial weight. *See Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001). While Plaintiff's choice of forum is to be given great weight, it "is not the final word." *Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

However, a plaintiff's choice of forum should be given less weight when it is not "the place where the operative facts of the action occurred." *See Dwyer v. General Motors Corp.* 853 F. Supp. 690, 694 (S.D.N.Y. 1994); *Teknekron*, 1993 WL 215024, *7 (holding that plaintiff's choice of forum, although plaintiff is a resident of that forum, is entitled to limited deference where center of gravity of action elsewhere). This Court gives less significance to the Plaintiffs' choice of the Northern District as a forum given that the accident occurred in San Diego, and the only connection with this district is that the Plaintiffs reside here and received treatment here. *See Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990-91 (E.D.N.Y. 1991) ("[w]here the transactions or facts giving rise to the action have no material relation or significant connection to plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced significance").

### C. Consideration of all Relevant Factors.

After considering all of the factors discussed above, the Court is persuaded that the interests of justice support transferring this matter to the Southern District of California to facilitate the convenience of live testimony by the pivotal causation witnesses. A plaintiff's choice of forum should not be lightly disturbed. However, Worthington has adequately overcome this initial presumption by clearly demonstrating the importance of live testimony from the witnesses that will directly contradict Plaintiffs' version of the accident. On balance, the Court finds that Worthington has met its burden of persuading this Court that this action should be transferred to the Southern District of California.

//

//

//

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Transfer and **TRANSFERS** this action to the Southern District of California. The Court **VACATES** all existing deadlines in the matter pending assignment of this matter to a judge of that District. The Clerk of this Court is **DIRECTED** to serve a copy of this Order on the Clerk for the Southern District of California, and to close the file.

**IT IS SO ORDERED.**

Dated: October 23, 2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE